925 P.2d 1195

**Feldon J. JACKSON, Jr., Petitioner–
Petitioner,**

v.

**STATE of New Mexico, Respondent–
Respondent.**

**No. 23386.**

Supreme Court of New Mexico.

Sept. 27, 1996.

Feldon J. Jackson, Jr., Los Lunas, Pro Se for Petitioner.

Tom Udall, Attorney General, Santa Fe, for Respondent.

OPINION

RANSOM, Justice.

1. We granted the petition of Feldon J. Jackson, Jr. under Rule 12–501 NMRA (1996) for a writ of certiorari to review the decision of the Second Judicial District Court denying Jackson's motion to correct an illegal sentence under Rule 5–802 NMRA (1996) (governing the habeas-corpus procedure to determine whether a sentence is illegal). In 1982, Jackson was convicted of first-degree felony murder, NMSA 1978, § 30–2–1A (Repl.Pamp.1994), and the underlying felony of robbery while armed with a deadly weapon, NMSA 1978, § 30–16–2 (Repl. Pamp.1994); NMSA 1978, § 31–18–16 (Repl. Pamp.1994). In accordance with the precedent set by this Court in *State v. Stephens,* 93 N.M. 458, 462–63, 601 P.2d 428, 432–33 (1979), Jackson was given sentences to be served consecutively for both first-degree felony murder and the underlying felony. Jackson claims that retroactive effect should be given our holding in *State v. Contreras,* 120 N.M. 486, 903 P.2d 228 (1995). There, we held that "when ... one's conduct is

unitary, one cannot be convicted of and sentenced for both felony murder and the underlying felony." *Id.* at 491, 903 P.2d at 233. Jackson seeks reversal of his conviction and sentence for robbery while armed with a deadly weapon. We affirm the district court.

■ 2. As we stated in *Contreras,* whether unitary conduct may be the subject of multiple punishments is a matter of legislative intent. *Id.* at 489, 903 P.2d at 231. In *Whalen v. United States,* 445 U.S. 684, 693–95, 100 S.Ct. 1432, 1438–40, 63 L.Ed.2d 715 (1980), the U.S. Supreme Court determined that Congress did not intend to punish both a felony murder and the predicate felony. The presumption that only one punishment is intended has been reaffirmed by a unanimous U.S. Supreme Court in *Rutledge v. United States,* —— U.S. ——, ——, 116 S.Ct. 1241, 1245, 134 L.Ed.2d 419 (1996). In *Contreras* we applied the rationale of the U.S. Supreme Court to determine the intent of the New Mexico Legislature.[1] 120 N.M. at 489–91, 903 P.2d at 231–33.

3. The State argues that retroactive application of *Contreras* is improper under our discussion of prospectivity and retroactivity in *Santillanes v. State,* 115 N.M. 215, 223–24, 849 P.2d 358, 366–67 (1993). The State is correct that in *Santillanes* we acknowledged that the Court has on many occasions applied changes to the law prospectively, and we did so in *Santillanes* where we first interpreted the *mens rea* element under the child abuse statute to require a showing of criminal negligence, and not ordinary civil negligence as accepted in prior cases. The State fails to note, however, that in *Santillanes* we specifically stated that "[i]t is within the inherent power of this Court to give its decision prospective or retroactive application without offending constitutional principles." *Id.* (citing *Lopez v. Maez,* 98 N.M. 625, 632, 651 P.2d 1269, 1276 (1982)). Further analysis is

therefore required before we can determine whether *Contreras* should be applied retroactively.

4. The Pennsylvania Supreme Court was faced with a situation similar to the instant case in *Commonwealth v. Harper,* 512 Pa. 155, 516 A.2d 319 (1986) (per curiam). The court had decided in an earlier opinion, *Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569, 570 (1981), that conviction and punishment for felony murder and the predicate felony violated the Double Jeopardy Clause. As in the instant case, the issue in *Harper* was whether *Tarver* should be applied prospectively or retroactively. In a concurring opinion, Justice Papadakos set forth the reasons for the court's per curiam denial of retroactivity:

Generally, where the purpose of a new constitutional doctrine is to cure a defect in the criminal procedure which impairs the truth finding function, and thus raises doubt as to the validity of the guilty verdict, the rule will be given full retroactive effect. In the context of the application of double jeopardy principles, however, the reliability of the truth determining process is not at issue. This weighs against giving full retroactive effect to the *Tarver* rule.

In *Tarver,* we did not specifically address the purposes to be served by the new rule that felony murder and its underlying felony are the same offense for sentencing purposes.... The 1981 decision was a significant departure from prevailing law; thus there was considerable justification for the trial judge's reliance on the existing law in 1975 when these sentences were imposed.... [T]he effect of a retroactive application of *Tarver* on the administration of criminal justice would be considerable.

---

1. In the legislative session immediately following the issuance of our opinion in *Contreras,* there was introduced in the state senate a bill to amend Section 31–18–14 (capital felony sentencing authority) by adding a new Subparagraph (C) that provides:

A person who commits murder in the first degree while in the commission of any felony ... may be charged with and convicted of both murder in the first degree and the underlying

felony. The person may be sentenced to serve consecutive sentences for both murder in the first degree and the underlying felony.

S. 706, 42nd Leg., 2nd Sess. § 1(C), 1996 N.M. Senate Bills. This bill never reached the floor of the senate for a vote and consequently tells us nothing about whether our determination of the intent of the legislature to punish only the first-degree murder was right or wrong.

*Id.* at 323–24 (Papadakos, J., concurring) (citations omitted).

5. Although not determinative, we note that Jackson did not raise and preserve the double-jeopardy issue during the initial stages of adjudication, either before or after judgment. The concurring justices in *Harper* also noted that since Harper did not "raise the sentencing question at his 1975 sentencing for his 1969 felony-murder[, or on appeal,] ... [Harper] is not entitled to relief, because the issue was not properly before the Superior Court." *Id.* at 322. This is because "where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases *where the issue in question is properly preserved* at all stages of adjudication up to and including any direct appeal." *Id.* at 322–23 (emphasis added) (quoting *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146, 148 (1983)). We nonetheless address the issue of retroactivity on its merits, and thus we need not consider applicability to a habeas-corpus proceeding of NMSA 1978, Section 30–1–10 (Repl.Pamp.1994) ("defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment").

6. Apart from the preservation issue, we find the discussion of retroactivity in *Harper* parallels our discussion of retroactivity in *Santillanes.* Compare *Harper,* 516 A.2d at 322–24 *with Santillanes,* 115 N.M. at 223–24, 849 P.2d at 366–67. As the *Harper* Court did, in *Santillanes* we cited with approval the three-part U.S. Supreme Court test from *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). This test states "that retrospective or prospective application must be determined on a case by case basis by looking at three issues: the purpose of the new rule, the reliance placed upon the old rule, and the effect upon the administration of justice that retroactive application would have." *Santillanes,* 115 N.M. at 224, 849 P.2d at 367.

7. The Court is persuaded that the application of this three-part test to this case requires a prospective application of *Contrer-*

*as.* The purpose of the *Contreras* opinion was to discern the intent of the New Mexico Legislature in a manner consistent with the rationale of the U.S. Supreme Court in its interpretation of Congressional intent relative to multiple punishments under like circumstances. 120 N.M. at 489–91, 903 P.2d at 231–33. In *Contreras,* we overruled the precedent of *Stephens,* 93 N.M. at 463, 601 P.2d at 433, in which, prior to *Whalen,* we had held that consecutive sentences are proper on conviction of both felony murder and the underlying felony. *Contreras,* 120 N.M. at 491, 903 P.2d at 233. The retroactive application of the rule in *Contreras* would unnecessarily diminish the expectations of finality so important to the rule of law.

8. *Contreras* did not state what the law had been; rather, it adopted a new rationale to interpret legislative intent, bringing New Mexico into line with the application of the Double Jeopardy Clause in the U.S. Supreme Court and most courts of other states. *Id.* at 491–92, 903 P.2d at 233–34. Consequently, we hold that the ruling in *Contreras* shall apply only to that case and other cases in which convictions and sentences for first-degree felony murder and the predicate felony were not final when *Contreras* was decided August 16, 1995. Thus, given that Jackson's sentencing for first-degree murder and the predicate felony were final prior to our ruling in *Contreras,* we affirm the district court's denial of Jackson's motion to correct an illegal sentence.

9. **IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, J., concur.