This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41343**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EDWARD DRANE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** This matter was submitted to this Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**Admission of Evidence**

**{2}** Defendant appeals from his conviction of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). Defendant argues that the testimony by the investigating detective and the forensic interviewer was improperly admitted into evidence because the statements relied on specialized knowledge and improperly vouched for the credibility of Victim. [BIC 1] Defendant acknowledges that these assertions of error are unpreserved, and seeks review for plain error. [BIC 1, 7] *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)).

**{3}** "Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157 (internal quotation marks and citation omitted). For plain error to have occurred, the appellate court "must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted). Under this standard of review, we must "examine the alleged errors in the context of the testimony as a whole." *Id.* (internal quotation marks and citation omitted). Plain error is "an exception to the general rule that parties must raise timely objection to improprieties at trial," and therefore it is to be used sparingly. *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877.

**{4}** In the present case, Defendant argues that Lily Monclova, the investigating detective, and Danessa Starkey, the forensic interviewer, were improperly allowed to give expert testimony as lay witnesses. [BIC 9] Detective Monclova testified about her fifteen years with the Farmington Police Department and her duties as part of child sexual assault investigations. [BIC 4; AB 5] She testified that she sets up safe house interviews, observes the interviews, and gathers evidence; and that she goes into interviews with an open mind. [AB 5; 02/07/2023 CD 11:45:53-46:33, 46:44-46:48] Detective Monclova testified specifically about her investigation involving Victim including that she set up an interview for Victim and "gathered up what [evidence] she was able to collect and presented it to the [district attorney (DA)'s] office." [BIC 4; 02/07/2023 CD 11:48:48-49:30] There was no physical evidence to gather because Victim delayed reporting the incident for a month. [BIC 4; 11:49:29-49:42] Detective Monclova explained that such delays are called "delayed reporting" and that in her experience as a detective investigating these types of crimes, delayed reporting is "very common especially with young children." [02/07/2023 CD 11:49:45-50:00] During cross-examination, Defendant's counsel questioned Detective Monclova about how she deals with "false allegations." [AB 6] Detective Monclova testified that her role is to determine whether there are differences in a victim's story and to gather what facts she can, but that ultimately it is up to the district attorney to make the charging decision. [AB 6; 02/07/2023 CD 11:50:28-50:55]

**{5}** Ms. Starkey, the forensic interviewer, testified about her experience and her work at a child advocacy center and shelter. [AB 6-7] She testified that she underwent almost 500 hours of training in the field, and had conducted 253 interviews of children. [AB 7; 02/07/2023 CD 1:10:39-11:26] In addition, she explained the methodology behind forensic interviews including that they are conducted with open-ended questions, and that she follows four basic rules: that (1) there is no guessing; (2) she will repeat statements from the child to confirm accuracy and the child can correct her; (3) if the child does not understand a question, she will ask it in another way; and (4) the child should only talk about things that happened in real life and should be truthful. [AB 7; 02/07/2023 CD 1:11:34-1:14:17] Ms. Starkey confirmed that she has experienced delayed reporting and when asked how often, she stated that "it's statistical fact that 98 [percent] of disclosures are delayed." [BIC 4; AB 8; 02/07/2023 CD 1:16:00-16:16]

**{6}** First, Defendant argues that the testimony from each of the two witnesses was improper lay testimony and that neither one was qualified as an expert witness under Rule 11-702 NMRA. [BIC 8-9] In response, the State concedes that the statements made by each witness regarding delayed reporting was expert testimony. [AB 10] Although we are not bound by the State's concession, *see State v. Martinez*, 1999-NMSC-018, ¶ 26, 127 N.M. 207, 979 P.2d 718, we agree this was expert testimony, *see State v. Duran*, 2015-NMCA-015, 343 P.3d 207, ¶ 18 (holding that testimony by a forensic interviewer regarding delayed disclosure by a child victim of sexual assault is "specialized knowledge within the purview of experts under Rule 11-702"). The State nevertheless argues that the admission of the testimony did not rise to plain error because both witnesses were qualified through their experience and specialized knowledge in their respective fields to satisfy the requirement under Rule 11-702. [AB 10] Based on our review of the record proper, we agree with the State.

**{7}** The State presented evidence that each of the two witnesses had sufficient experience and specialized knowledge to give an opinion on delayed disclosure, Defendant does not contest the qualifications of Detective Monclova or Ms. Starkey. Detective Monclova testified about her fifteen years of experience with the Farmington Police Department as an investigating detective and, specifically, her experience in the violent crimes division. She testified about working cases that primarily involve sexual assault and crimes against children and how she conducts those investigations. She also testified about her observations of the forensic interviews. As for Ms. Starkey, she also based her statements regarding delayed disclosure on her training and experience as a forensic interviewer, which included almost 500 hours of training and 253 interviews. Because Detective Monclova and Ms. Starkey were qualified to testify as they did, we conclude no plain error occurred. *See State v. Barraza*, 1990-NMCA-026, ¶ 18, 110 N.M. 45, 791 P.2d 799 (finding no plain error where, among other things, the witness had adequate expertise to offer the expert opinion testimony at issue).

**{8}** Next, Defendant argues that the testimony from both witnesses regarding the delayed disclosures constituted improper vouching and therefore plain error. [BIC 12] A similar issue was addressed in *Barraza*. There, this Court considered an expert's testimony that the symptoms described by the victim were consistent with rape trauma

syndrome based on scientific studies. *Barraza*, 1990-NMCA-026, ¶ 10. The Court noted that "it might be improper for the jury to infer from such studies that one suffering those symptoms is actually a victim of rape." *Id.* However, this Court explained that the expert did not testify that the victim had been raped—and in fact, referred to the "alleged rape"—and did not find that the risks were sufficient enough to make the admission of the testimony plain error. *Id.* ¶ 18.

**{9}** Both witnesses testified generally about the large number of delayed disclosures and neither witness testified directly about Victim. Their respective testimony explained that Victim's one month delay in reporting the incident is consistent with other minors who have been the victims of sexual abuse. *See State v. Lucero*, 1993-NMSC-064, ¶ 19, 116 N.M. 450, 863 P.2d 1071 (explaining that it is proper "to offer the testimony of a qualified psychologist to show that the complainant's symptoms are consistent with symptoms that have been observed in known victims of sexual abuse because such expert opinion is probative of whether a crime has been committed"). The testimony did not require an inference that either witness believed Victim, only that Victim's delay in disclosing the incident was not uncommon. *See Barraza*, 1990-NMCA-026, ¶ 18. Accordingly, we conclude that the delayed disclosure testimony did not constitute improper vouching.

**{10}** In addition, Defendant argues that Detective Monclova gave improper vouching testimony regarding the credibility of Victim when the prosecutor asked, "If you don't believe that a crime has occurred, you would not bring it to the [DA's] office" and she responded, "That's correct." [BIC 4, 8; 02/07/2023 CD 11:51:55-52:07] The statement was elicited on redirect after defense counsel cross-examined Detective Monclova about her statement during the direct examination regarding "false allegations." Detective Monclova acknowledged that false allegations can occur, and confirmed that her job is to gather facts to determine if there are any differences in stories, and that she turns those facts over to the DA's office, and that it is the DA who makes any charging decisions. [02/07/2023 CD 11:50:28-51:14] In addition, when testifying about this investigation, Detective Monclova specifically referred to the incident as "a possible sexual assault." [02/07/2023 CD 11:46:58-47:08] Defendant also cites as improper vouching Starkey's testimony that she had come across false allegations during forensic interviews and that she did not see any signs of false allegations (such as advanced verbiage, saying that an adult told them to say something) during Victim's forensic interview. [02/07/2023 CD 1:21:45-22:35] This testimony was elicited on redirect after Defendant's counsel elicited testimony on cross-examination that Starkey had no way of knowing whether a child's disclosures are true or false. [02/07/2023 CD 1:18:20-45]

**{11}** Defendant does not persuade us that the foregoing emphasized or bolstered the credibility of Victim's testimony or that its admission calls the validity of the verdict into question, particularly when we take into consideration the testimony as a whole. *See State v. Muller*, 2022-NMCA-024, ¶ 43, 508 P.3d 960 (providing that the burden is on the defendant asserting plain error). We conclude that Detective Monclova's and Ms. Starkey's testimony does not constitute plain error requiring reversal. *See Montoya*, 2015-NMSC-010, ¶ 46; *Torres*, 2005-NMCA-070, ¶ 9.

**Ineffective Assistance of Counsel**

**{12}** Defendant contends that because his counsel failed to object to the testimony of Detective Monclova and Ms. Starkey, he was denied effective assistance of counsel. [BIC 13-16] "In order to prevail on an ineffective assistance of counsel claim, a defendant must show deficiency on the part of counsel and that such deficiency resulted in prejudice." *State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162. The defense is prejudiced if "there was a reasonable probability that the result of the trial would have been different." *State v. Dylan J.*, 2009-NMCA-027, ¶ 38, 145 N.M.719, 204 P.3d 44 (omission, internal quotation marks, and citation omitted). "There is a general presumption that trial counsel provided effective assistance." *Gonzales*, 2007-NMSC-059, ¶ 14. "The presumption of effective assistance will remain intact as long as there is a reasonable trial tactic explaining counsel's performance." *Id.*

**{13}** Defendant asserts that the main issue at trial centered on Victim's credibility. He claims that because there was no physical evidence or testimony from any direct eyewitnesses, and because his trial counsel failed to object to the testimony of Detective Monclova and Ms. Starkey, his counsel was ineffective. [BIC 16] He argues that his "counsel's failure to object could not have been a rational strategy." [BIC 14]

**{14}** We cannot say, however, that counsel's failure to object to the testimony of the two witnesses constituted deficient performance or that such failure cannot be explained by a plausible rational strategy. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (stating that a prima facie case of ineffective assistance of counsel will not be found where there is a plausible, rational strategy, or tactic to explain trial counsel's conduct). Although Defendant maintains that "the errors at issue here are amply documented in the current record" [BIC 15], based on our review of the record proper, it is not apparent that trial counsel acted unreasonably. As the State argued, Defendant's trial counsel could have had a rational strategy for not objecting to the testimony. [AB 24] Counsel could have believed that the witnesses' testimony on delayed disclosures was admissible, and if counsel had objected to it, it could have highlighted the probative value of the testimony. In addition, had counsel objected to the testimony on the basis that it was expert testimony but neither witness had been qualified as an expert, the State could have merely moved to have each witness qualified as an expert under Rule 11-702. Based on the record before us, it is unlikely that the outcome would have been different. *See Dylan J.*, 2009-NMCA-027, ¶ 38.

**{15}** For these reasons, Defendant has not established a prima facie case of ineffective assistance of counsel. This decision, however, does not preclude Defendant's ability to pursue habeas corpus or other post-conviction relief in a collateral proceeding. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

**Sufficiency of the Evidence**

**{16}** Defendant contends that there was insufficient evidence presented at trial to support his conviction for CSCM. [BIC 17-18] We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. Under this standard, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez*, 1993-NMSC-007, ¶ 68, 115 N.M. 6, 846 P.2d 312. We do not reweigh the evidence, nor "substitute [our] judgment for that of the fact-finder so long as there is sufficient evidence to support the verdict." *Sutphin*, 1988-NMSC-031, ¶ 21.

**{17}** We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). Here, to convict Defendant of criminal sexual contact of a minor, the State was required, in relevant part, to prove beyond a reasonable doubt that (1) "[D]efendant touched or applied force to the unclothed mons pubis and or vulva of [Victim]," and (2) "[Victim] was a child under the age of [thirteen]." [RP 158] *See* § 30-9-13(B)(2); UJI 14-925 NMRA (providing elements for criminal sexual contact of a minor (under thirteen)).

**{18}** According to Defendant's brief in chief, at the time of trial, Victim was eight years old. [BIC 2] She testified that she woke up one night and "saw [Defendant] crouched down close to her legs" and that "[h]is mouth was open and his face was near her private parts." [BIC 2] She testified that "[s]he knew he was licking her." [BIC 2] Viewing this evidence in the light most favorable to the verdict, we conclude that the evidence described above is sufficient to establish that Defendant committed criminal sexual contact of a minor. *See State v. Pitner*, 2016-NMCA-102, ¶¶ 9, 11, 385 P.3d 665 (concluding that there was sufficient evidence to support the defendant's conviction of CSCM when the victim testified that the defendant had rubbed her "a little above her privates" (alteration and internal quotation marks omitted)); *see also State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 (explaining that the testimony of a single witness constitutes sufficient evidence to uphold a conviction).

**{19}** To the extent that Defendant argues that Victim was not credible because she "gave inconsistent accounts on a number of details, which undermine confidence in her ability to recall events with accuracy," we disregard any contrary evidence. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie); *State v. Wilson*, 1998-NMCA-084, ¶ 18, 125 N.M. 390, 962 P.2d 636 ("Fact-finding is a function of the [trial] court."). The question for us on appeal is whether the trial court's "decision is supported by substantial evidence, not whether the [trial] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

**{20}** For the foregoing reasons, we affirm Defendant's conviction for CSCM.

**{21}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**GERALD E. BACA, Judge**